**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | | |
|---|---|---|
| **IMPLICIT, LLC,** | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | **CIVIL ACTION NO. 6:17-CV-182-JRG** |
| | § | **LEAD CASE** |
| **HUAWEI TECHNOLOGIES USA, INC.,** *et al.*, | § | |
| | § | |
| | § | |
| *Defendant.* | | |

| | | |
|---|---|---|
| **IMPLICIT, LLC,** | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| | § | **CIVIL ACTION NO. 6:17-CV-336-JRG** |
| v. | § | **(CONSOLIDATED CASE)** |
| | § | |
| **PALO ALTO NETWORKS, INC.,** | § | |
| | § | |
| *Defendant.* | | |

<u>**DEFENDANT PALO ALTO NETWORKS, INC.'S REPLY IN SUPPORT OF ITS**</u>
<u>**MOTION FOR PARTIAL SUMMARY JUDGMENT OF NONINFRINGEMENT AS TO**</u>
<u>**U.S. PATENT NO. 9,325,740 (D.I. 85)**</u>

**TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION ..................................................................................................1

II.  RESPONSE TO IMPLICIT'S STATEMENT OF FACTS ................................................2

    A.  PAN'S Statement of Facts ............................................................ 2

    B.  Implicit's Description of the '740 Patent............................................ 2

    C.  Implicit's Description of the Accused Products ...................................... 3

III.  ARGUMENT..................................................................................................4

    A.  The Parties Stipulated to the Meaning of "Transformation Operation". ................ 4

    B.  No Genuine Issues of Material Fact Remain ........................................ 7

    C.  PAN's Motion is not Premature........................................................... 9

IV.  **CONCLUSION** .................................................................................................10

## TABLE OF AUTHORITIES

**Federal Cases**

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986) ....................................................................8

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ...............................................................................8

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574 (1986) .............................8

*MyMail v. AOL*, 476 F.3d 1372 (Fed. Cir. 2007)................................................................... 3-4, 10

**State Cases**

*Implicit, LLC v. Trend Micro, Inc.*, 6:16-cv-00080 (Consolidated Lead Case), D.I.
    115, at 45...................................................................................................................... 3, 5-7

**Rules**

Fed. R. Civ. P. 56.....................................................................................................................1, 3, 8, 9

L.R. 3-1 ...............................................................................................................................................9

L.R. 3-6 ...............................................................................................................................................9

## I.      INTRODUCTION

Implicit makes three principal arguments in response to PAN's summary judgment motion, each of which fails.

First, Implicit argues that PAN's motion is "based on an incorrect understanding of the parties' stipulated claim construction of the 'transformation operation' limitation."  D.I. 99 at 3. More specifically, Implicit argues that PAN interprets the limitation in such a way that it precludes "the possibility that the entirety of the code of the requested resource can be modified."  Implicit uses this extreme example—of the entirety of the code of a resource being modified—to prop up its real argument that "[so] long as the code of the produced resource differs from the code of the requested resource, that code has been 'transformed' or 'modified.'" What Implicit is really saying, therefore, is that the substitution of an <u>entirely new file</u> for the old file would constitute a "transformation" of the code.  That proposition defies the English language, the specification, and common sense.  Simply put, the claim is not broad enough to ensnare the situation where a client requests one file having code, and is provided an entirely different file having code, with the only commonality between the two being that both files have code.  The provision of a second, entirely different "resource" (i.e., an entirely different and unrelated file) cannot be considered the result of transforming (modifying) code *within the first resource*.

Second, Implicit halfheartedly argues that material issues of fact remain.  But Implicit does not come forth with any evidence in support of this position.

Third, Implicit argues that PAN's motion is premature, which it is not.  Implicit has identified its asserted claims and the accused products, and PAN filed a summary judgment motion.  Implicit has not attempted to satisfy the requirements of Federal Rule 56(d) to identify through declarations what additional discovery would be needed to oppose the motion.

Moreover, Implicit is under the misconception that its infringement contentions are only "preliminary."  But under the local rules, Implicit's infringement contentions are "final" and no exceptions under the local rules apply.  Implicit asks in the alternative that the Court grant it leave to withdraw its stipulation to the Court's prior construction of "transformation operation," arguing that Implicit should not be bound by a stipulation "that does not reflect an agreement by the parties."  Implicit simply does not like the implications of the stipulated construction, but that is not a basis to undo a stipulated construction.

## II.   RESPONSE TO IMPLICIT'S STATEMENT OF FACTS

### A.   PAN'S Statement of Facts

As an initial matter, Implicit does not dispute any of the facts set forth in PAN's Statement of Undisputed Facts (D.I. 85, §III).  These facts, therefore, are deemed established for purposes of PAN's motion.

### B.   Implicit's Description of the '740 Patent

PAN disagrees with Implicit's description of the "transformation operation" in the '740 Patent as "any operation in which the output code differs from the input code."  D.I. 99 at 2. Specifically, PAN disagrees that there is any description in the '740 Patent where providing a completely different resource from that which is requested is considered a "transformation operation" in the context of the '740 Patent and its claims.[1]

PAN also disagrees with Implicit's description of "verification" as being a transformation operation that is "defined broadly" as "any operation that inputs unverified code and outputs

---

[1] Implicit also cites to the example of a "compression" operation as showing that the '740 Patent "provides … that a transformation operation can include the substitution of one code for another."  Compression involves replacing portions of code *within a resource* with smaller equivalent code.  '740 Patent, 5:37-39.  This operation does not imply or otherwise support the notion that provision of an entirely different resource than that which is requested is a "transformation operation."

verified code." *Id.* That is, in the *Trend Micro* action, the Court rejected Implicit's view that "transformation operation" is broad enough to include merely "analyzing" a resource, as recited in Implicit's proposed construction of that term, and noted that "the transformation operation of the verifier, like all transformation operations, transforms code by modifying the code." *See Implicit, LLC v. Trend Micro, Inc.*, 6:16-cv-00080 (Consolidated Lead Case), D.I. 115, at 45.

### C.     Implicit's Description of the Accused Products

The Parties fundamentally agree on how the Accused Products (referred to in PAN motion as the "PAN Firewall") operate. Though it remains that there are no genuine issues of material fact as to the operation of the PAN Firewall, Implicit mischaracterizes its arguments applying claim limitations as "facts" regarding the operation of the products. *See MyMail v. AOL*, 476 F.3d 1372, 1378 (Fed. Cir. 2007) ("Because there is no dispute regarding the operation of the accused systems, that issue reduces to a question of claim interpretation..."). For example, Implicit agrees that the PAN Firewall operates to "block" the requested resource (e.g., a "forbidden or dangerous website" in Implicit's words) and send, instead, a block message ("File Download Blocked" page) to the client. But Implicit's infringement theory—which is ***not*** fact—bleeds into its description of facts when it characterizes this operation as "transform[ing] the resource" and "chang[ing] the display of a requested website." D.I. 99 at 3. The undisputed facts conclusively establish that the "File Download Blocked" page is *not* generated from the requested resource (e.g., blocked website) and is not a change in the display of that blocked website. Rather, the File Download Blocked page is a completely different file that is locally generated. D.I. 85 at 4-5, 10-12; Ralston Decl. (D.I. 85-7) at ¶¶ 6-10.

PAN also disagrees with Implicit's argument—again not fact—that the '740 Patent's "verification procedure" is "substantially identical" to the PAN Firewall's ability to block a

resource and then allow the resource to pass unmodified if a user selects the "continue" option on the "File Download Blocked" Page.  *See* D.I. 99 at 3.  The verification operation described in the '740 Patent modifies code ***within the requested resource***, which is not the case with sending either a "File Download Blocked" page or an unmodified, unblocked website page to the client.  *See* '740 Patent, 5:51-55 (describing modifications made to code ***within the resource*** before the resource is sent to the client device).

## III.   ARGUMENT

Implicit offers three principal objections to PAN's request for summary judgment, each of which fails.  Summary judgment of noninfringement remains appropriate here because there is no genuine dispute over the manner in which the PAN Firewall operates and no relevant dispute as to the scope of any asserted claim.  PAN is entitled to judgment as a matter of law that it does not directly or indirectly infringe any asserted claim of the '740 Patent.

### A.   The Parties Stipulated to the Meaning of "Transformation Operation".

Implicit attempts to recast PAN's non-infringement position as the Accused Products "cannot meet the 'transformation operation' limitation" (D.I. 99 at 4) and then argues that PAN's motion is premised on an incorrect understanding of that agreed term.  But the parties are in complete agreement as to what a "transformation operation" is, *i.e.*, "an operation that modifies code".  And there is no exception to an agreement simply because it leads to summary judgment. *See MyMail, Ltd. v. America Online, Inc. et al.*, 476 F.3d. 1372 (Fed. Cir. 2007) ("Having agreed to that construction before the district court, MyMail 'cannot now argue against that claim construction simply because it resulted in an adverse ruling on summary judgment.'") (citing *LizardTech, Inc. v. Earth Res. Mapping, Inc.,* 424 F.3d 1336, 1341 (Fed. Cir. 2005)).

In its Motion, PAN carefully traced the use of the term "resource" through the claims and established that there is a continuity in the use of the term "resource" across the multiple

limitations of each claim.  That is, the claims establish that the client first requests a resource, and it is this same resource that is (i) obtained from an external network, (ii) subject to a transformation operation (where code in the resource is modified) and (iii) then sent to the client in response to the client's request for that resource.  D.I. 85 at 8-9.  Implicit's challenge shows not that there is a disagreement as to the meaning of "transformation operation" but instead that Implicit does not like the result (*i.e.*, non-infringement) when the agreed meaning of "transformation operation" is applied throughout the claim.

For example, Implicit generalizes that "[s]o long as the code of the produced resource differs from the code of the requested resource, that code has been 'transformed' or 'modified.' All or part of the requested code can be transformed or modified."  D.I. 99 at 5; *see also id.* at 7-8 ("A 'modification' is, therefore, anything that [sic] causes code to be different, and that the code of a requested resource is 'transformed' when an accused system changes it into the form of a banner.")  This argument falls apart when the agreed meaning of "transformation operation" is properly applied in the context of the claim.  An example illustrates this point:  Assume a client computer requests the Google MAPS App (which would be the requested "resource") from the server.  The server obtains this resource from the external network, but then sends to the client the TWITTER App in response to the client's request for Google MAPS.  In this example, the code of the produced resource (TWITTER) is certainly different – likely completely different – than the code of the requested resource (Google MAPS).  But no reasonably fact finder could conclude that providing the TWITTER app was the result of "modifying code" in the requested Google MAPS app.  They are simply two different things – and thus, two different resources.

As with the foregoing example, the Accused Products provide a completely different resource (a locally generated "File Download Blocked" page) than what is requested by the

client (website page that is blocked).   Even under the assumption, *in arguendo*, that both resources have code, no reasonable fact finder could conclude that the code in the "File Download Blocked" page is produced by modifying (transforming) code in the blocked website page.

Indeed, Implicit's own expert admits that – contrary to the requirements of the claims – what the PAN Firewall sends to the client is **not** what the client requested:

> Within PAN's accused products, the process of generation of the warning banner and its display on the user's computer and the accompanying functionality is implemented by the JavaScript code, **which is sent instead of the requested resource** to the user's computer by PAN's accused products.

Declaration of Dr. Atif Hashmi ("Hashmi Decl.") ¶ 7.

Implicit also mischaracterizes PAN's position as "exclude[ing] the possibility that the entirety of the code of the requested resource can be modified."  D.I. 99 at 5.  Implicit argues that "PAN does not point to any language in the '740 Patent specification indicating or implying that modifications of code are restricted to **portions**—but not all—of a resource."  *Id.* (emphasis in original).   That is not PAN's position.   A resource could certainly be "transformed" if the operation proceeds line-by-line and replaces each line of code with a compressed, optimized or verified version of that line of code, resulting in all code in a resource being modified.  But in that situation, the client computer would still receive the resource that it requested (i.e., just a better (optimized), smaller (compressed) and/or safer (verified) version of that resource).  But that is not the situation Implicit accuses of infringement.  It is undisputed that when the PAN Firewall blocks a resource, such as a web page, it does nothing **to modify that resource**.  *See* Ralston Decl., ¶6.  Instead, the PAN Firewall sends a completely different resource – the "File Download Blocked" page – that (a) did not come from the external network (as required by the claims), (b) does not involve modifying any code that may be found within the requested web

page (as required by the claims) and (c) is not the resource requested by the client (as required by the claims).  *See* Ralston Decl., ¶¶6-10.

Finally, Implicit argues that PAN's "proposed understanding of 'modify,' and by extension its narrowing of the 'transformation operation' claim language" conflicts with the Court's claim construction order in *Trend Micro.*  D.I. 99 at 6.  It does not.  The Court in *Trend Micro* rejected Implicit's overly broad proposed construction of "transformation operation" that allowed for merely "analyzing" code and found that it was an "operation that modifies code." *Trend Micro* Order at 43 (setting forth Implicit's construction as "an operation that analyzes and/or modifies code…"), 45 (setting forth Court's construction of "transformation operation"). The Court's analysis, therefore, dealt solely with the meaning of "transformation operation" and did not touch on what resource is being requested, transformed and sent to the client – which is what forms the basis for PAN's motion.

**B.      No Genuine Issues of Material Fact Remain**

Implicit is incorrect that genuine issues of material fact remain.  Implicit makes a strawman argument that finds no evidentiary support.  Specifically, Implicit argues that "if *any* of the code of the requested resource is retained, the code is 'modified' and therefore 'transformed.'"  D.I. 99 at 8.  According to Implicit, "[g]enuine issues of material fact remain because some code for requested resources in the accused systems may be preserved… PAN not only fails to offer any proof that the display of a banner necessarily involves replacing all code, but also disregards the evidence that at least some of the code from the requested resource is preserved when the banner is displayed." *Id.*

First, Implicit's argument is founded on the incorrect predicate that there is a "replacement" of code from a requested resource when the "File Download Blocked" page (what

Implicit calls a "banner") is produced and sent to the client device.  As discussed at length in the PAN Opening Brief and above, the "File Download Blocked" page is generated internally by the PAN Firewall and is not generated or otherwise produced from the blocked resource (e.g., a blocked website page) obtained from the external network.  *See, e.g.,* Ralston Decl., ¶9. Therefore, code from the blocked website page is not "replaced" in whole or in part in producing the "File Download Blocked" notification page.

Second, Implicit has not met its burden to challenge PAN's motion.[2]  Implicit offers no evidence—indeed not even a single citation—in support of its assertion that there is "evidence that at least some code from the requested resource is preserved when the banner is displayed." *See* D.I. 99 at 8.   And there is no such evidence.   Again, the "File Download Blocked" notification page is a completely different file that shares no code (modified or otherwise) with the blocked resource.  *See* Ralston Decl. at ¶¶ 6-10.

Finally, Implicit argues that a reasonable fact-finder "could conclude that such code [in the File Download Blocked notification page, i.e., "banner"] supplements, and therefore modifies, the requested resource" and "could conclude that the code for the banner is 'related' to the code for the resource and therefore constitutes a modification of that code on this basis." D.I. 99 at 9-10.  Implicit cites to the declaration of Dr. Hashmi, ¶7, in support of these statements. But, as discussed above, Dr. Hashmi actually confirms that the banner page is sent to the client "***instead of*** the requested resource." Hashmi Decl., ¶7 (emphasis added).  There are no genuine

---

[2] PAN, as the moving party, met its initial burden under F.R.C.P 56.  As such the burden shifted to Implicit to designate specific facts demonstrating the existence of genuine issues for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  Implicit must do more than show there is some "metaphysical doubt" as to the material facts at issue. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).  Implicit must come forth with evidence from which a jury could reasonably render a verdict in its favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986).  Implicit has not done so.

issues of material fact regarding the operation of the PAN Firewall.  It is undisputed that code within the blocked requested resource is not modified by the PAN Firewall.  Rather, when that resource is blocked, it is ***not*** passed along to the client and a completely different resource (*i.e.*, the "File Download Blocked" notification page) is sent instead to the client.  That "File Download Blocked Page" is not the resource requested by the client and is not the product of modifying code in the blocked resource that the client did request.

### C.        PAN's Motion is not Premature.

Finally, Implicit argues that PAN's motion is premature because Patent L.R. 3-6 provides for amendment of infringement contentions.  The appropriate basis to oppose a summary judgment motion for prematurity would be Federal Rule 56(d), with which Implicit has not attempted to comply.  Here, Implicit has identified asserted claims and accused products, and absent Implicit satisfying Federal Rule 56(d), the motion is ripe for decision.

But even under Implicit's view of what might make a motion premature, Implicit is under the misconception that their infringements contentions are only "preliminary."  *See* D.I. 99 at 9 (referring to "infringement theories currently set out in Implicit's preliminary infringement contention charts").  But the Local Rules state that Implicit's infringement contentions are "final."  *See* Patent L.R. 3-6 (a) ("Each party's "Infringement Contentions" and "Invalidity Contentions" shall be deemed to be that party's final contentions, except as set forth below.").  The exception to this finality under 3-6(a) does not apply, as PAN's motion for summary judgment is not dependent on any claim construction issues in this Court's Claim Construction Memorandum and Order (D.I. 101); indeed, there were not even any disputed terms from this patent.  Otherwise, leave of the Court is required under 3-6(b), which Implicit has not sought, and which would not be justified in light of the fact that Implicit invoked Patent L.R. 3-1(g) and

had full access to PAN's source code before serving its updated contentions on December 14, 2017.  D.I. 85 at 2-3; Powers Decl. (D.I. 85-2) at ¶¶5-6.

In the alternative, Implicit asks the Court for leave to withdraw its stipulation to the Court's prior construction of "transformation operation," arguing that Implicit should not be bound by a stipulation "that does not reflect an agreement by the parties," even though Implicit sat on its hands on this issue during the *Markman* hearing last month, after this motion was filed. D.I. 99 at 9.  The Court should reject this request because, as shown above, not liking an outcome is not an excuse to set aside a stipulated construction.  *MyMail*, 476 F.3d at 1378. Moreover, there is no disagreement between the parties as to the meaning of the term.  Implicit simply does not like the implications of that agreed meaning once that meaning is applied in the full context of the claims.

## IV.   CONCLUSION

For all of the foregoing reasons and those set forth in its Motion for Partial Summary Judgment (D.I. 85), the Court should grant summary judgment that PAN's Accused Products do not infringe the '740 Patent.

Respectfully submitted this 9th day of March, 2018.

/s/ Matthew S. Gaudet
L. Norwood Jameson (Georgia Bar No. 003970)
Matthew S. Gaudet (Georgia Bar No. 287789)
David C. Dotson (Georgia Bar No. 138040)
John R. Gibson (Georgia Bar No. 454507)
S. Neil Anderson (Georgia Bar No. 757113)
Joseph A. Powers (Pennsylvania Bar No. 84590)
**DUANE MORRIS LLP**
1075 Peachtree Street
Suite 2000
Atlanta, Georgia 30309
Telephone:  404.253.6900

Facsimile:  404.253.6901

**GILLAM & SMITH LLP**
Melissa Richards Smith
Allen Franklin Gardner
102 N College, Suite 800
Tyler, TX 75702
903-934-8450
Fax: 903-934-9257
E-mail: melissa@gillamsmithlaw.com
Email: allen@gillamsmithlaw.com

*Attorneys for Defendant*
*Palo Alto Networks, Inc.*

11

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of **Palo Alto Networks' Reply in Support of Its Motion For Partial Summary Judgment of Noninfringement as to U.S. Patent No. 9,325,740** via the Court's CM/ECF system per Local Rule CV-5(a)(3) on March 9, 2018.  Any other counsel of record will be served by first class mail.

*/s/ Melissa Richards Smith*
Melissa Richards Smith
