IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| IMPLICIT, LLC,<br><br>*Plaintiff*,<br><br>v.<br><br>HUAWEI TECHNOLOGIES USA, INC., et al.,<br><br>*Defendants*. | CIVIL ACTION NO. 6:17-cv-182-JRG<br>(LEAD CASE)<br><br>JURY TRIAL DEMANDED |

# IMPLICIT LLC'S MOTION FOR PARTIAL SUMMARY JUDGMENT OF
# <u>NO INVALIDITY IN VIEW OF DECASPER 1 AND DECASPER 5</u>

**I.      INTRODUCTION**

Plaintiff Implicit, LLC ("Implicit") respectfully moves for summary judgment of no invalidity in view of the "Decasper 1" and "Decasper 5" references discussed below. With fact discovery closed, Defendant Palo Alto Networks, Inc. ("PAN") has presented no evidence that: (1) Decasper 5 was publicly available before the critical date; (2) Decasper 1 and Decasper 5 are a single anticipatory prior art reference; or (3) there is sufficient reason to combine Descaper 1 and Decasper 5 under 35 U.S.C. § 103.

**II.     LEGAL PRINCIPLES**

    **A.      Summary Judgment**

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute about a material fact is "genuine" when the evidence is "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Where (as in the case of invalidity) the moving party does not have the ultimate burden of persuasion at trial, "[t]he moving party need not produce evidence negating the existence of a material fact, but need only point out the absence of evidence supporting the non-moving party's case." *Saunders v. Michelin Tire Corp.*, 942 F.2d 299, 301 (5th Cir. 1992).

    **B.      Printed Publications as Prior Art**

"Whether an anticipatory document qualifies as a 'printed publication' under § 102 is a legal conclusion based on underlying factual determinations." *SRI Int'l, Inc. v. Internet Sec. Sys., Inc.*, 511 F.3d 1186, 1192 (Fed. Cir. 2008). When no facts are in dispute—as is the case

here[1]—the question of whether a reference represents a "printed publication" is a question of law. *Navico Inc. v. Garmin Int'l, Inc.*, No. 2:16-CV-190-JRG-RSP, 2017 WL 3750252, at *2 (E.D. Tex. July 28, 2017), *report and recommendation adopted,* No. 2:16-CV-190-JRG-RSP, 2017 WL 3764213 (E.D. Tex. Aug. 29, 2017) (citing *In re Klopfenstein*, 380 F.3d 1345, 1347 (Fed. Cir. 2004)).

"When considering whether a given reference qualifies as a prior art 'printed publication,' the key inquiry is whether the reference was made 'sufficiently accessible to the public interested in the art' before the critical date." *Voter Verified, Inc. v. Premier Election Sols., Inc.*, 698 F.3d 1374, 1380 (Fed. Cir. 2012). A reference will be considered publicly accessible if it was "disseminated or otherwise made available to the extent that persons interested and ordinarily skilled in the subject matter or art exercising reasonable diligence, can locate it." *Kyocera Wireless Corp. v. Int'l Trade Comm'n*, 545 F.3d 1340, 1350 (Fed. Cir. 2008). Courts should assess "public accessibility" on a case-by-case basis. *Id.*

### C. Combinations of References

"[R]ejections on obviousness grounds cannot be sustained by mere conclusory statements; instead, there must be some articulated reasoning with some rational underpinning to support the legal conclusion of obviousness." *In re Kahn*, 441 F.3d 977, 988 (Fed. Cir. 2006). Such reasons may include, for example, market forces; design incentives; any need or problem known in the field of endeavor at the time of invention and addressed by the patent; and the background knowledge, creativity, and common sense of the person of ordinary skill. *E.g., KSR*

---

[1] As in *Navico*, although the parties dispute whether the Decasper 5 reference was sufficiently publicly available, the relevant underlying facts are not disputed. *Navico*, 2017 WL 3750252, at *2 n. 1.

*Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 399 (2007); *Perfect Web Techs., Inc. v. InfoUSA, Inc.*, 587 F.3d 1324, 1328 (Fed. Cir. 2009); *Plantronics, Inc. v. Aliph, Inc.*, 724 F.3d 1343, 1354 (Fed. Cir. 2013).

### III. ARGUMENT

#### A. There Is No Evidence That Decasper 5 Was Publicly Available.

As an initial matter, Decasper 1 and Decasper 5 may not be combined to render the asserted patents obvious because there is no evidence that Decasper 5 was sufficiently publicly available before the critical date to qualify as invalidating prior art.

##### 1. Dr. Russ Provides No Evidence That Decasper 5 Was Publicly Available

In his expert report, PAN's invalidity expert, Samuel Russ, invokes two articles purportedly written by Dan Decasper (et al.) in (or before) 1998. Dr. Russ refers to these articles collectively as the "Decasper references" or, collectively, "Decasper." Ex. A, ¶ 77. "Decasper 1" refers to a September 1998 article entitled "Router Plugins - A Software Architecture for Next Generation Routers," and "Decasper 5" refers to an article entitled "DAN: Distributed Code Caching for Active Networks." *Id.*

With respect to Decasper 1, Dr. Russ states:

> Decasper 1 was publicly available at least as early as September 4, 1998, when it was presented at the ACM SIGCOMM'98 conference, which took place from September 3-4, 1998. I am familiar with, and have personally attended, many conferences like the ACM SIGCOMM conference. In my experience, the papers presented at those conferences are provided to the attendees. My experience is consistent with the testimony Mr. Decasper gave, in which he explained that when he presented at the SIGCOMM'98 conference, the Decasper 1 paper was given out to attendees, and that he presented his paper to approximately a thousand attendees.

*Id.*, ¶ 78. For Decasper 5, however, Dr. Russ only states, "Decasper 5 was publicly available at least as early as April of 1998. I have attached as Exhibit C to my report the declaration of Ingrid Hsieh-Yee, who co[n]firmed public availability of Decasper 5 as of April 1998." *Id.*,

3

¶ 79.  Thus, Dr. Russ relies entirely on Dr. Hsieh-Yee's analysis of the public availability of Decasper 5 and provides no independent evidence or opinion concerning whether Decasper 5 was "publicly available."

### 2. Mr. Decasper Provides No Evidence That Decasper 5 Was Publicly Available

As Dr. Russ correctly notes, Mr. Decasper testified that, when he presented Decasper 1 at the SIGCOMM'98 conference, the paper was distributed to attendees.  Ex. B at 26 ("when you show up, they give [the paper] to you as part of your package").  As to Decasper 5, however, Mr. Decasper only testified that he *presented* the paper—not that the paper was distributed to attendees.  *Id.* at 81-84.  For the purposes of 35 U.S.C. § 102(b), "an entirely oral presentation at a scientific conference that includes neither slides nor copies of the presentation is without question not a 'printed publication.'" *Klopfenstein*, 380 F.3d at 1349 n. 4.  Thus, Mr. Descasper provides no evidence that Decasper 5 was "publicly available."

### 3. Dr. Hsieh-Yee Provides No Evidence That Decasper 5 Was Publicly Available.

Finally, neither Dr. Hsieh-Yee's declaration nor her deposition testimony provide any evidence that Decasper 5 was "disseminated or otherwise made available to the extent that persons interested and ordinarily skilled in the subject matter or art exercising reasonable diligence, can locate it." *Kyocera*, 545 F.3d at 1350 (Fed. Cir. 2008).  Dr. Hsieh-Yee's declaration and testimony concerns the presence of Decasper 5 in brick-and-mortar libraries.  In such cases, the proper inquiry is generally "whether the reference was sufficiently indexed or cataloged." *Blue Calypso, LLC v. Groupon, Inc.*, 815 F.3d 1331, 1348 (Fed. Cir. 2016).

In this case, Dr. Hsieh-Yee's testimony does not establish that Decasper 5 was sufficiently indexed or cataloged.  To the contrary, Dr. Hsieh-Yee testified that the Library of Congress would *not* have cataloged Decasper 5 because it appeared in a journal:

> Q. Do you know if the Library of Congress keeps track of the date of entry of the record in the bibliography for this particular article?
>
> A. You mean the time when the record get updated?
>
> Q. When it was created, the bibliographic information for this particular article, not for the journal. For this particular article.
>
> A. Oh. The library does not create records for articles.
>
> Q. It only creates for the journal?
>
> A. Right.

Ex. C at 67:23-68:9. As Dr. Hsieh-Yee explained, the "indexing industry," for example, IEEE, indexes articles within journals. *Id.* at 70-72. However, there is no evidence that IEEE (or anyone else) ever indexed Decasper 5—as Dr. Hsieh-Yee herself admitted:

> Q. But, once again, we have no evidence in front of us that actually this article was indexed by IEEE?
>
> A. That's correct.

*Id.* at 138:14-17.

Thus, Dr. Hsieh-Yee provides no evidence that Decasper 5 was "publicly available."

For these reasons, Implicit respectfully requests that the Court find, as a matter of law, that Decasper 5 was not "'sufficiently accessible to the public interested in the art' before the critical date" to qualify as prior art. *Compare Voter Verified*, 698 F.3d at 1380.

### B. Decasper 1 and Decasper 5 Are Not a Single Prior Art Reference.

To render the asserted patents invalid, PAN first attempts to combine Decasper 1 and Decasper 5 into a single anticipatory prior art reference. Nothing in the record suggests or supports this combination.

PAN attempts to justify this combination by arguing that the references share a common co-author, were generated around approximately the same time, and "describe the same ongoing

5

research and development efforts." Ex. A, ¶ 80.  But, as Mr. Decasper himself confirmed in writing, and then testified under oath, those references in question were at least "partly orthogonal" and employ "fundamentally different model[s.]"  Ex. D at 237:7-238:4.  In other words, by Mr. Decasper's own admission, the references are, at best, only tangentially related to one another.  Furthermore, neither Dr. Russ nor PAN purport to rely on the "ongoing research and development efforts" as prior art—only on the Decasper 1 and Decasper 5 papers themselves.  *See* Ex. A, ¶ 77 ("The family of references referred to as the 'Decasper references' or, collectively, 'Decasper' are a set of articles written by Dan Decasper (*et al.*) in (or before) 1998.").  Any effort to treat as a single reference two admittedly "orthogonal" publications simply because of temporal proximity and partial overlap in authorship fails as a matter of law to raise a triable issue for the jury.

### C. There Is No Evidence That One of Ordinary Skill in the Art Would Have Combined Decasper 1 and Decasper 5.

PAN next attempts to combine Decasper 1 and Decasper 5 to render the asserted patents obvious under 35 U.S.C. § 103.  This effort similarly fails as a matter of law because there is no evidence (whether expressly in these references, as a matter of common sense, or otherwise) of any reason to combine Decasper 1 and Decasper 5 in a way that would render the asserted patents obvious.  Implicit is aware of no opinion issued by any tribunal holding that mere overlap in authorship, without more, allows a lay jury to infer a reason to combine references.  Moreover, the record offers no evidence that a person of ordinary skill could combine Decasper 1 and Decasper 5 to practice the claimed invention without undue experimentation, much less that the claimed inventions likely would be a predictable result of such a combination.

Here, the sole basis for PAN's contention regarding a motivation to combine Decasper 1 and Decasper 5 is a conclusory, one-sentence assertion in Dr. Russ's expert report: "There would

[REDACTED] have been a strong motivation to combine, inasmuch as the articles offer a series of overlapping solutions to the same problems, and would have been able to be combined without undue experimentation by a POSITA and would have been likely to yield predictable results." Ex. A, ¶ 82.



The Russ Report does not state what type or level of experimentation might be employed to combine the references to practice the claimed invention, does not opine what the results of such experimentation might be (let alone why they would be predictable to a person of ordinary skill in the art), and does not otherwise provide any facts or non-conclusory opinions that might aid the jury in making this determination for themselves as required by Federal Rule of Evidence

702.[2] In short, the only way a jury could determine that these references could be combined so as to invalidate the asserted claims is if the jury accepts on faith Dr. Russ's unsupported conclusion. It is well-settled, however, that summary judgment may not be denied on the force of an expert's bare legal conclusion. *E.g., TechSearch, L.L.C. v. Intel Corp.*, 286 F.3d 1360, 1372 (Fed. Cir. 2002) ("unsupported or conclusory [expert] averments are insufficient to avoid summary judgment where the moving party has met its initial burden").

Thus, Implicit respectfully requests that the Court find, as a matter of law, that there is insufficient evidence to support combining Decasper 1 and Decasper 5 under 35 U.S.C. § 103.

## IV. CONCLUSION

For the reasons stated above, Implicit respectfully prays that the Court grant partial summary judgment of no invalidity in view of Decasper 1 and Decasper 5.

Date: August 23, 2018

Respectfully submitted,

By: /s/ William E. Davis, III
William E. Davis, III
Texas State Bar No. 24047416
bdavis@bdavisfirm.com
Christian J. Hurt
Texas State Bar No. 24059987
churt@bdavisfirm.com
Edward Chin (Of Counsel)
Texas State Bar No. 50511688
echin@bdavisfirm.com
Debra Coleman (Of Counsel)
Texas State Bar No. 24059595
dcoleman@bdavisfirm.com

---

[2] Nor could Decasper have provided any of these required details. Decasper 5 explicitly disclosed "an idea which has not implemented or verified yet[,]" wherein "[s]everal of the components of the system described are subject to chan[g]e." Ex. [[Decasper 5]] at 616. If the system discussed in Decasper 5 was itself unimplemented, unverified, and subject to change, PAN should not be heard to argue that that system might be combined with the system described in Decasper 1 without undue experimentation to yield predictable results.

8

██████████████████████████

                                **THE DAVIS FIRM, PC**
                                213 N. Fredonia Street, Suite 230
                                Longview, Texas 75601
                                Telephone: (903) 230-9090
                                Facsimile: (903) 230-9661

                                Benjamin L. Singer
                                bsinger@singerbea.com
                                James Hopenfeld
                                jhopenfeld@singerbea.com
                                Adam S. Cashman
                                acashman@singerbea.com
                                Evan Budaj
                                ebudaj@singerbea.com
                                Walter C. Pfeffer
                                wpfeffer@singerbea.com
                                **SINGER / BEA LLP**
                                601 Montgomery St., Suite 1950
                                San Francisco, CA 94111
                                Telephone: (415) 500-6080
                                Facsimile: (415) 500-6080

                            *Attorneys for Plaintiff Implicit, LLC*

## CERTIFICATE OF SERVICE

      The undersigned certifies that the foregoing document is being filed electronically in compliance with Local Rule CV-5(a). As such, this document is being served on all counsel who are deemed to have consented to electronic service. Local Rule CV-5(a)(3)(V). Pursuant to Federal Rule of Civil Procedure 5(d) and Local Rule CV-5(d) and (e), any counsel of record not deemed to have consented to electronic service will be served with a true and correct copy of the foregoing by email on this August 23, 2018.

                                                /s/ William E. Davis, III
                                                William E. Davis, III

## CERTIFICATE OF CONFERENCE

I hereby certify that counsel has complied with the meet and confer requirement in Local Rule CV-7(h) regarding the subject matter of this motion, which is opposed by Defendant Palo Alto Networks, Inc. The parties met and conferred via telephone on August 23, 2018, but discussions have conclusively ended in an impasse, leaving an open issue for the court to resolve.

/s/ William E. Davis, III
William E. Davis, III